The EMPLOYERS' LIABILITY ASSUR-
ANCE CORPORATION, Ltd.,
Appellant,

v.

M. D. A. MAES, Sr., Appellee.

No. 5303.

United States Court of Appeals
Tenth Circuit.

July 10, 1956.

Rehearing Denied Aug. 20, 1956.

A. K. Montgomery, Santa Fe, N. M. (Seth & Montgomery, William R. Federici and Justin T. Reid, Santa Fe, N. M., were with him on the brief), for appellant.

Arturo G. Ortega, Albuquerque, N. M. (A. T. Rogers, Jr., Las Vegas, N. M., and Lorenzo A. Chavez, Albuquerque, N. M., were with him on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiffs brought this action for a declaration of rights and liabilities under a public liability insurance policy issued by the defendant company. The defendant admitted the issuance of the policy and alleged that it was effectively cancelled prior to the date of the accident described in the complaint and that there was no liability thereunder. The issue made by the pleadings and the evidence was whether the notice of cancellation had been given in the manner provided for by the provisions of the policy.[1] On special interrogatory, the jury found that the company did not give written notice of the cancellation of the policy by "depositing such written notice in the United States mails at Albuquerque, New Mexico on July 9, 1954, in an envelope properly stamped and addressed to M. D. A. Maes, 824—7th Street, Las Vegas, New Mexico." The court entered judgment, declaring that the policy was not duly and regularly cancelled and was in full force and effect on July 20, 1954. This appeal is from that judgment.

At the trial, the company assumed the burden of proving the cancellation of the policy. There was testimony as to the preparation of the notice, comparison of the address on the envelope, and the mailing of same. A copy of the notice, addressed to plaintiff at 824—7th Street, Las Vegas, New Mexico, and also an unsigned and uninitialed receipt on a printed post office form showing the receipt of one piece of ordinary mail addressed to plaintiff at the same address were introduced in evidence. The address on both the notice and the post office receipt showed a typewritten strikeover which indicated that the address originally on the notice and the receipt was not 824—7th Street, Las Vegas, New Mexico. An inexperienced clerk who prepared the notice, receipt and the envelope in which

---

1. The policy provides:

"23. Cancellation. This policy may be cancelled by the named Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the named Insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

"If the named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named Insured."

the notice was mailed, testified that she did not know what address was on the envelope or whether there was a mistake in addressing the same.[2] An Assistant Postmaster testified that upon request a supply of receipt forms is furnished to the sender of mail, who fills in the form and attaches it to the piece of mail delivered for mailing. The receiving clerk is required to compare the address on the receipt with that on the mail, stamp the time of receipt, initial it, and return it to the sender. He said that this receipt was not initialed and it could not be determined which clerk received it. He also testified that because the receipt had a typewritten strikeover on the address, there was no way to ascertain from it that the address on the mailed matter was to the plaintiff at 824—7th Street. The street number on the notice was first written as "4th Street"; later the figure "4" was struck over to show as "7th Street". On the Post Office receipt the street number was given as "1th Street"; the figure "1" was struck over with the number "7".[3] A copy of the notice attached to the answer prior to amendment showed the address of plaintiff to be 824 —4th Street, Las Vegas, New Mexico. The local agent at Las Vegas who sold the policy was not notified of the cancellation. The unearned premium was not returned or tendered. The uncontradicted evidence of the plaintiff was that the notice was not received.

■ The law is settled in New Mexico that in the absence of a statute fixing the manner of giving notice of cancellation of an insurance policy, it shall be determined by the provisions of the insurance contract. Where, as here, the policy requires only the mailing of a written notice of cancellation to the insured at the address shown in the policy, strict compliance with the mailing provisions is sufficient to cancel the policy, and the actual receipt of the notice by the insured is unimportant. Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310, 1311.

■■ The Insurance Company, having interposed the defense of cancella-

2. The clerk's testimony, as to the strikeover, is as follows:
"Q. Referring to Defendant's Exhibit E, which you have testified is a copy of the notice and a copy of the receipt, and showing you Plaintiff's Exhibit 1, which is the original of the policy, is there a difference between the address on the policy and the address on that notice? A. Yes, on the copy of the notice there is a strike-over, on the number of the street. And on the original of the policy it is very plain that it is 7th Street.
"Q. It isn't so plain on the notice? A. No, there is a strike-over on it.
"Q. Now, referring to the receipt from the post office, do you notice any difference between the address shown on the receipt and the address shown on the policy? A. Yes, sir, there is again a strike-over on the number of the street on the receipt.
"Q. So that the address on the notice of cancellation is not as clear as the address on the policy? A. That is right.
"Q. And also on the notice of cancellation and on the post office receipt the name of the County has been omitted, has it not? A. That is right.
\* \* \* \* \*

"Q. Do you recall now, Miss Chavez, from your own knowledge, whether any mistake was made in the envelope in which this particular notice was enclosed? A. No, I don't recall.
"Q. You don't know whether it had any mistakes on it or not? A. No, I don't recall. \* \* \* "

3. As to these strikeovers, the Assistant Postmaster testified:
"Q. Now, you say that the clerk compares the address on the envelope with the address on the receipt in the regular procedure? A. That is regular procedure.
"Q. In this particular instance there is no way of our telling, is there, except by guess whether the clerk compared the 1 to a 1 on the envelope or the 7 to a 7 on the envelope? A. No.
"Q. Or the 17 to a 17 on the envelope? A. There is no way to tell.
"Q. It could be a 1 on the envelope? A. That receipt had a strike-over and it could be.
"Q. It could be either a 1 or a 7 on the envelope? A. Could be either a 1 or a 7 on the envelope.
"Q. And there is no way of telling? No record is kept of this? A. No record made of it whatever."

tion of the policy, had the burden of proving strict compliance with the cancellation provisions. Gendron v. Calvert Fire Ins. Co., supra; Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177; Clark v. Employers Mutual Casualty Co., 8 Cir., 90 F.2d 667, 115 A.L.R. 1204; Medford v. Pacific National Fire Ins. Co., 189 Or. 617, 219 P. 2d 142, 222 P.2d 407, 16 A.L.R.2d 1181. Clearly the foregoing facts present a question of fact as to whether the insurance company had sustained the burden of proving that the notice had been mailed to the insured at the address shown in the policy.

 Referring to the testimony of the plaintiff that the notice was never received by him through the mail, the court instructed the jury as follows:

"* * * under the terms of the policy, it isn't necessary that the insured actually receive the notice. It is a sufficient compliance with the policy if a notice were actually mailed as provided for in the policy itself. And to the address given. However, the law does presume where there is evidence that a notice of this kind wasn't received, a legal presumption arises that it wasn't properly mailed and addressed. And in the light of the testimony offered by the defendant, by the plaintiff Maes that he never received the notice, it wasn't delivered to his place, you have the right to take into consideration the presumption of law which I have just explained to you that non-receipt raises a presumption that it wasn't properly mailed. However, that is not a conclusive presumption. It isn't binding upon the jury. If there is evidence that offsets and overcomes that presumption or contradicts it, a legal presumption no longer exists. But even though there is evidence offsetting and overcoming the legal presumption, the evidence that the notice

wasn't received, if you find that it wasn't received at the address, may still be considered by you on the question whether or not it was actually mailed in strict compliance with the terms of the policy. And for that purpose you could consider the testimony of non-receipt even though the legal presumption might be overcome. * * *"

While recognizing that the failure to receive an article through the mail raises a presumption that it was not mailed, the defendant contends that its evidence wholly dissipated the presumption and that the instruction erroneously permitted the jury to consider the presumption as evidence in determining the question of whether the envelope containing the notice had been mailed.

There is considerable confusion in the reported cases as to the effect of presumptions of this kind, but it is generally considered to be the rule that a presumption such as we have here is not evidence in itself and disappears upon the production of evidence which offsets or overcomes it, and the case should go to the jury free of any presumption. Wigmore on Evidence, 3d Ed., § 2491, Par. 2; O'Brien v. Equitable Life Assurance Co. of United States, 8 Cir., 212 F.2d 383, certiorari denied 348 U.S. 835, 75 S.Ct. 57, 99 L.Ed. 658; Crude Oil Corp. of America v. Commissioner of Internal Revenue, 10 Cir., 161 F.2d 809; Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644, 95 A.L.R. 869, Annotation 878; British American Assur. Co. of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256. There are cases, however, which hold that certain kinds of presumptions are properly considered by the jury.[4] In the instant case, the presumptions are of no particular importance. The burden throughout the trial was on the defendant company to prove strict compliance with the provisions of the policy in the mailing of the notice of cancellation. The jury was told in unmis-

**4.** A scholarly discussion of the subject by Justice Blume of the Wyoming Supreme Court is found in Worth v. Worth, 48 Wyo. 441, 49 P.2d 649, 103 A.L.R. 107.

takable language that if the notice was properly mailed, regardless of non-receipt by the plaintiff, there was an effective cancellation.[5] Even though reference to the presumptions may not have been necessary, the jury was so clearly informed of what it was to do that it could not have been misled. In addition the jury was told that if the evidence offset or overcame the presumption, it no longer existed. With the evidence indicating a discrepancy in the mailing address, it was proper for the jury to consider, along with the other evidence, the fact of non-receipt of the notice. We find no prejudicial error in the instruction.

 Finally, it is urged that the court erred in failing to give three instructions requested by defendant. The sufficiency of the objection to the court's refusal to give these instructions is questioned. We have examined the record and find that the failure to give the instructions was called to the attention of the court at the proper time. The exceptions were not as precise as they might have been and were somewhat argumentative, but they were called to the attention of the court and it was fully understood by the court that the defendant desired the exceptions. The exceptions meet the requirements of Fed.Rules Civ.Proc. rule 51, 28 U.S.C.A. Moore's Federal Practice, 2d Ed., Vol. 5, § 51.04.

There is no need for a separate discussion of these requested instructions. There is no tenable basis for the contention that the failure to give them constituted prejudicial error. It is sufficient to say that even though they may be correct statements of law, the court is not required to give requested instructions if the material issues are covered by the instructions as a whole. Loew's

Inc., v. Cinema Amusements, 10 Cir., 210 F.2d 86; Missouri, K. & T. Ry. Co. v. Jackson, 10 Cir., 174 F.2d 297; Deroumian v. Stokes, 10 Cir., 168 F.2d 305.

As has been stated, the critical issue was whether the defendant had mailed the notice in strict compliance with the terms of the policy. As to this issue, the jury was comprehensively and correctly instructed.

Affirmed.

5. The pertinent part of the instructions referred to read:
"* * * it would have been sufficient in this case if the notice of cancellation had been mailed on the 9th of July, 1954, in an envelope properly stamped and addressed and deposited in the United States Post Office, * * *".

"* * * All you will have to do is answer that one question. Was this notice of cancellation mailed in strict compliance and terms of the policy, as I have outlined it to you. And if you are so satisfied by a preponderance of the testimony you will answer the interrogatory 'Yes'."